

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable C. B. Cavness
State Auditor
Austin, 11, Texas

Dear Mr. Cavness:  Opinion No. O-7390

Re: Whether or not the Prison Board,
the General Manager of the Prison Sys-
tem, or any of the prison employees,
may legally assess and collect any
fees or amounts of money from prison
employees because such person may
have been responsible for allowing
a convict to escape; and other cog-
nate matters

We have your letter requesting our opinion upon the fol-
lowing questions, which for convenience sake we have re-numbered:

"1. Can the Prison Board, the general manager
of the Prison System, or any of the prison employees
legally assess and collect any fees or amounts of
money from any prison employee because such person
may (or may not) have been responsible for allowing
a convict to escape?

"2. If you rule in the negative on question No.
1 above, should such prison employees who have been
assessed and paid such fees at $25.00 per escape be
reimbursed by the Prison System; if so, for what
period of time (retroactive to when)?

"3. Of the prison personnel, who can legally de-
clare a convict to be a "trusty" and for what period
of time? (Please cite governing statutes.)

"4. Can convicts legally drive over the highways
of Texas in prison owned motor vehicles, with or with-
out a guard or other prison employee being present?

"5. Can such convicts legally obtain a driver's
or chauffeur's license to drive prison owned or other
motor vehicles over State Highways?

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable C. H. Cavness - page 2

"6. What effect does this practice of allowing
prisoners to drive prison owned motor vehicles have
on the prison insurance coverage, covering public
liability and property damages? (Please cite stat-
utes, if any).

"7. What legal rights are allowed such prison
employees and peace officers in pursuing an escaping
convict as to entering privately owned property,
buildings, etc.? (Please cite statutes)"

Subsequent to receipt of your inquiry we requested fur-
ther information relating to the first two questions, and you re-
plied as follows:

"I received a letter this morning which indi-
cates that there are no written contracts or agree-
ments between the employees of the Prison System
and the General Manager or Prison Board concerning
the collection of any amounts of money because any
such employee may have been responsible for allow-
ing a convict to escape. We are told that it is
simply a practice that has been handed down through
the years and that there are no direct indications
as to whether it is an 'administrative policy' ex-
cept that it is a verbally handled matter, and that
all Prison employees such as guards, farm managers,
etc., are told of the condition on being hired and
that they all clearly understand that they are sub-
ject to the assessment of such amounts of money.
The money is collected directly from the employees
most responsible for the escaping of the convict,
and frankly we are unable to determine just where
the authority for this arises."

We shall answer your questions in the order above
stated.

1. Section 10 of Article XVI of the Constitution
says:

"The Legislature shall provide for deductions
from the salaries of public officers who may neg-
lect the performance of any duty that may be as-
signed them by law."

There are no statutes authorizing the Board of
Prison Commissioners or the General Manager of the Prison Sys-
tem to impose fines or pecuniary assessments upon employees of
the Prison System who may neglect the performance of their du-
ties assigned them by law. On the contrary, as respects the
proposed assessments involved in your question 1, the Legisla-
ture has enacted Article 318 of the Penal Code, providing:

"Any officer, jailer, or guard who has the
legal custody of any person accused or convict-
ed of a felony not capital who wilfully permits
such person to escape or to be rescued shall be
confined in the penitentiary not less than two
nor more than five years."

Again, in Article 321 of the Penal Code it is provided:

"Any officer, jailer or guard who has the
legal custody of a person accused or convicted
of a felony not capital who negligently permits
such person to escape or be rescued shall be
fined not exceeding one thousand dollars."

Since the Legislature has thus specifically dealt with
the precise matter of escapes through willfulness or negligence
of the officer or guard having him in custody, the method there
prescribed by necessary implication excludes any other method of
assessment of penalties or fines in dealing with escapes.

In our opinion, the stated practice of the Board is in
the nature of a penalty, and is beyond the authority of the Board.

2. If it should be that the deductions or assessments, such as you mention, have been unlawfully made by the Board, or its officers, they are unlawful and beyond the authority of the Board, as answered in the preceding question. The question of whether or not the employee guard thus suffering the deduction or paying the assessment may recover the same, and if so, from whom and how, perhaps should not be answered by us, since it pertains to the personal right of the party aggrieved, and is not therefore one as to which we should advise. In any event, the question of recovery would depend in some measure perhaps upon whether the deduction or actual payment, other than by deductions, was voluntarily paid, and therefore not recoverable upon the principle of voluntary payment, while on the other hand, whether or not the impending danger to the guard of loss of employment by discharge would constitute legal duress. We cannot safely state a rule applicable alike to all cases, for each such individual situation depends upon its own peculiar facts.

3. Only the Board of Prison Commissioners has authority to appoint trusties. Subject, however, in cases of extreme emergency, to the right of any farm manager to fill a vacancy in any position theretofore held by a trusty for a length of time not to exceed ten days. (Art. 6184b). You will find that this matter is fully regulated in Articles 6184a to 6184j of Vernon's Codification of the Revised Civil Statutes.

4. No prisoner, except trusties, may lawfully leave the prison without being accompanied by proper guard.

A trusty may legally drive over the highways of the State in a prison-owned motor vehicle with or without a guard, or other prison employee being present, provided it be "upon business connected with the prison". (Art. 6184e, Rev. Civ. Stat., Vernon's Cod.)

Article 6184g further places limitations upon trusties being at large or off the prison property.

5. Subject to what we have said immediately above with respect to prisoners, we answer Question 5 that convicts may legally obtain a driver's or chauffeur's license to drive prison-owned, or other motor vehicles, over the State's highways. Section 2 of Article 6087b (Vernon's Cod. of the Rev. Stat.) in subdivision (a) provides that:

"No person, except those hereinafter especially exempted, shall drive any motor vehicle upon a

highway in this State unless such person has a
valid license as an operator, a commercial opera-
tor, or a chauffeur under the provisions of this
Act."

Section 4, by necessary implication, states who are
entitled to a license by specifically naming those to whom a
right to a license is forbidden. Nowhere in this Section do
we find anything prohibiting the issuing of a license to a con-
vict. Of course, a convict who is ineligible to receive a li-
cense would for that reason be denied one.

6. Your question is very general, but we think it
is answered in the decision of Texas Prison Board et al v. Ca-
been, 159 S. W. (2) 523, writ of error refused. It is there
held:

"It is our conclusion that by the enactment
of Article 6166z10 the Legislature did not waive
the immunity of the State of Texas from liability
for torts committed by the convicts in the peni-
tentiary. * * *. The language of the article
does not create a liability against the State
and its employees, with power in the Texas Pris-
on System to protect its employees from such lia-
bility, but the insurance is for protection
against an existing liability. * * *. There be-
ing no liability but for this article, and this
article not having created a liability, then it
cannot afford appellee relief."

Since Article 6166z10 authorizes insurance for the
protection of "officers and employees" of the Texas Prison
System from liability to third persons arising out of the use
and operation of automobiles, motor trucks, and other motor
vehicles used by the Texas Prison System, and not therefore
for the benefit of prisoners driving such vehicles, we can
not perceive any possible effect of the practice mentioned by
you upon the Prison's insurance coverage in any event.

7. The legal rights of guards of the Prison System
with respect to the pursuing of escaping convicts are the same
as those of the ordinary peace officers. There is no special
statute applying to guards or officers pursuing prison convicts.

They may employ every reasonable means, including
force, necessary to effect a capture. Thus, they may enter
privately-owned property without the owner's consent, or over

his protest; or even break in a door, if his authority and mission be made known, and such owner persists in refusing admittance if reasonably necessary in their discretion to enter. For further discussion of these powers, see the case, Ex parte Sherwood, 15 S. W. 812.

The foregoing conclusions are predicated upon court decisions. There are no express statutes dealing with them.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
ASSISTANT

ASSISTANT
ATT'Y GENERAL

OS-VR